Hilary L. Barnes, #19669
Khaled Tarazi, #32446
**ALLEN BARNES & JONES, PLC**
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona  85004
Office:  (602) 256-6000
Fax:  (602) 252-4712
Email: hbarnes@allenbarneslaw.com
ktarazi@allenbarneslaw.com
Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| INDUSTRIAL RIDE SHOP, LLC, | Case No. 2:16-bk-14176-BKM |
| Debtor. | Jointly Administered with: |
| In re: | Case No. 2:16-bk-14389-BKM |
| INDUSTRIAL SKATE & BOARDS, INC., | |
| Debtor. | |
| This filing applies to:<br><br>☒ BOTH DEBTORS<br>☐ INDUSTRIAL RIDE SHOP, LLC<br>☐ INDUSTRIAL SKATE & BOARDS, INC. | **APPLICATION TO EMPLOY AND RETAIN FINANCIAL ADVISOR FOR DEBTORS PURSUANT TO 11 U.S.C. § 328(a)** |

Pursuant to 11 U.S.C. §§ 327 and 328, Fed. R. Bankr. P. 2014 and 2016, and Local Bankruptcy Rule 2014-1,[1] Industrial Ride Shop, LLC ("Ride Shop") and Industrial Skate & Boards, Inc. ("Skate"), debtors and debtors in possession (collectively, "Debtor") in the above-captioned jointly administered chapter 11 cases (collectively, "Case"), hereby apply for entry of an order authorizing employment of Resolute Commercial Services, LLC ("Resolute") as Debtor's financial advisor as of January 8, 2017.  Debtor is seeking the Court's authorization to employ and retain Resolute as its financial advisor in the Case on a fixed fee basis of $20,000 per month, such fees to be guaranteed for the first 60 days of Resolute's retention and thereafter

---

[1] Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037 ("Rules").

upon agreement of Debtor and Resolute, subject to the Court's right to adjust such fees, under Code § 328, if the terms and conditions of Resolute's employment are later proven improvident in light of unforeseen developments. For the services Resolute will provide, the fixed fee will prove less costly to the bankruptcy estate than an hourly arrangement.

This Application is supported by (i) the <u>Verified Statement of Jeremiah Foster in Support of Application to Employ and Retain Financial Advisor for Debtors Pursuant to 11 U.S.C. § 328(a)</u>" ("Foster Statement"), filed contemporaneously herewith; (ii) the engagement agreement ("Agreement") with Resolute, attached hereto as **Exhibit A**; (iii) the following memorandum of points and authorities; and (iv) the entire record of this Case before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Jurisdiction and Venue

1. Ride Shop and Skate each filed voluntary petitions for relief under Chapter 11 on December 16 and December 21, 2016, respectively.

2. Debtor continues to operate its business as debtor in possession in accordance with Code §§ 1107 and 1108.

3. This Court has jurisdiction over the Case under 28 U.S.C. §§ 157 and 1334. This Application is a core proceeding under 28 U.S.C. § 157(b)(2).

4. Ride Shop is an Arizona limited liability company, and Skate is an Arizona corporation, with principal places of business in Phoenix, Arizona. Accordingly, venue for the Case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested in this Application are Code §§ 327(a), 328(a), and Rule 2014.

6. No trustee or examiner has been appointed in this Case, nor has an official committee of unsecured creditors been appointed.

### Relief Requested

7. By this Application, Debtor seeks to retain and compensate Resolute as its financial advisor pursuant to Code §§ 327(a) and 328(a) and in accordance with the Agreement as of January 8, 2017. It is essential that Debtor employ Resolute to perform the services set

forth herein.

8.  After consideration and discussion, Debtor selected Resolute as its financial advisor to provide financial advisory services in connection with Debtor's efforts to improve its financial and operating performance, reporting directly to the managing member, and to assist Debtor in its reorganization and restructuring efforts.

## Services

9.  Resolute intends to perform certain professional services for Debtor that will benefit the estate and creditors, including:

   a. to the extent feasible, familiarizing itself with Debtor's business, operations, properties, financial condition, secured and unsecured debt, and prospects;

   b. reviewing and analyzing Debtor's cash liquidity and assist its management in identifying areas of improvement;

   c. assisting in the determination of Debtor's ideal capital structure;

   d. providing financial advice and assistance to Debtor in developing a plan of reorganization (as the same may be modified from time to time, the "Plan");

   e. attending meetings with Debtor, Debtor's counsel, creditors, parties in interest, the United States Trustee's Office, and any committees that may be appointed in the Case;

   f. providing testimony, as necessary, in any proceeding before the Bankruptcy Court with respect to matters for which Resolute has been engaged;

   g. being available to Debtor's managing member and its bankruptcy counsel regarding the services to be provided as described in the Agreement;

   h. assisting Debtor in connection with financial issues, including assistance in preparation of reports and as liaison and in negotiations with creditors, both secured and unsecured;

   i. driving, coordinating, and/or guiding negotiations with lender(s), as necessary;

   j. negotiating with potential investors, current and former employees, landlords, sellers, buyers, suppliers, contractors, creditors, customers and other stakeholders, to restructure the operations, contracts, ownership, governance, organizational and capital structure, assets and liabilities of Debtor as may be feasible and necessary; and

k. assisting in any negotiation and successful sale of any of Debtor's non-core or excess assets.

## Qualifications

10. Resolute was founded in in 2008 by partners with an average of twenty years of receivership and financial advisory experience in a wide range of industries. Resolute provides clients with advisory services to secure, resolve, and enhance financial assets and business operations.

11. Resolute has extensive experience in serving a wide range of entities across the country, including financial institutions, corporations, law firms, state and federal courts, and trustees. Resolute has met with Debtor's management and its counsel, visited Debtor's Tempe headquarters, and understands the issues that must be addressed to assist Debtor in the Case to reorganize for the benefit of its creditors.

12. Based on the Foster Statement, Resolute is disinterested and has no connection with Debtor's creditors or any other party-in-interest, or their respective attorneys.

13. Resolute represents no interest adverse to Debtor or the estate in the matters upon which it is to be engaged for Debtor, and its employment would be in the best interest of this estate and its creditors.

14. Further qualifications are set forth in the prospectus attached as Exhibit 1 to the Foster Statement, incorporated herein by reference.

## Compensation

15. The terms of Resolute's employment, to which Debtor has agreed subject to this Court's approval, are set forth in the Agreement and fully incorporated herein by reference.

16. Resolute intends to charge for its professional services, seek expense reimbursement, and receive indemnification for services rendered to Debtor pursuant to the terms and conditions of the Agreement, as may be modified by the terms of any orders of this Court.

17. Under the terms of the Agreement, subject to this Court's approval under Code § 328(a), Resolute's compensation for services rendered under the Agreement

("Compensation") will consist of:

    a. A monthly financial advisory fee of $20,000 for at least the first 60 days of the engagement (the "Initial Period"), or $40,000 guaranteed, and continuing thereafter subject to evaluation and further agreement by Resolute and Debtor on or before the expiration of the Initial Period;

    b. A restructuring fee of $50,000 ("Restructuring Fee") at the conclusion of the Case, which will "payable based on any of the following (a) recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase, repurchase and/or a material modification or amendment to the terms, conditions or covenants thereof) of [Debtor's] debt securities and/or other indebtedness, obligations or liabilities (including partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including without limitation pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations, and/or (b) the disposition to one or more third parties in one or a series of related transactions of (x) all or substantially all of the equity securities of [Debtor] by the security holders of the [Debtor] or (y) all or substantially all of the assets or businesses of the [Debtor] or its subsidiaries, including without limitation through a sale or exchange of capital stock, options of assets; a lease of assets with or without a purchase option, a merger, consolidation or other business, combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction," *see* Agreement, at pp. 2-3 ; and

    c. Reimbursement on a monthly basis for Resolute's travel and other reasonable out-of-pocket expenses incurred in connection with, or arising out of Resolute's activities under or contemplated by the Agreement.

18. In light of the services that Resolute will perform: (i) the Compensation for the Initial Period is reasonable; and (ii) the hours to be worked, the results to be achieved, and the ultimate benefit to Debtor of the work performed, in each case, in connection with this Application, may be variable, and Debtor and Resolute have taken this into account in negotiating and agreeing to the Compensation. If Resolute were to commit the manpower for the services it will provide to Debtor on an hourly basis, especially in the first 60 days of the Case, the monthly fees would eclipse $20,000 quickly. In addition, after 60 days, Resolute and Debtor will evaluate the arrangement and determine whether the Compensation should continue thereafter, with notice to the Court if the arrangement will be altered.

19. Debtor did not provide Resolute with any pre-petition retainer, and Resolute holds no funds from Debtor.

WHEREFORE, Debtor respectfully requests that the Court approve the employment of Resolute as Debtor's financial advisor as of January 8, 2017 under the terms specified in the Agreement.

DATED: January 9, 2017.

**ALLEN BARNES & JONES, PLC**

/s/ *KT #32446*
Hilary L. Barnes, Esq.
Khaled Tarazi, Esq.
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona 85004
Attorneys for Debtor

**E-FILED** on January 9, 2017 with the U.S. Bankruptcy Court and copies served via ECF notice on all parties that have appeared in the case.
**COPY** mailed and emailed the same date to:

Patty Chan, Esq.
OFFICE OF THE UNITED STATES TRUSTEE
230 N. First Ave., #204
Phoenix, AZ 85003
patty.chan@usdoj.gov

**COPY** emailed same date to:

| | |
|---|---|
| Dustin P. Branch, Esq.<br>BALLARD SPAHR LLP<br>2029 Century Park East, Suite 800<br>Los Angeles, CA 90067<br>branchd@ballardspahr.com<br>*Attorneys for The Macerich Company* | David L. Pollack, Esq.<br>Craig Solomon Ganz, Esq.<br>Michael S. Myers, Esq.<br>BALLARD SPAHR LLP<br>1 E. Washington Street, Suite 230<br>Phoenix, AZ 85004-2555<br>pollack@ballardspahr.com<br>ganzc@ballardspahr.com<br>myersms@ballardspahr.com<br>*Attorneys for GGP Limited Partnership*<br>*Attorneys for The Macerich Company*<br>*Attorneys for Washington Prime Group Inc.* |
| Ronald Eric Gold, Esq.<br>A.J. Webb, Esq.<br>FROST BROWN TODD LLC<br>3300 Great American Tower<br>301 E. Fourth Street<br>Cincinnati, OH 45202<br>rgold@fbtlaw.com<br>awebb@fbtlaw.com<br>*Attorneys for Washington Prime Group Inc.* | Kyle S. Hirsch, Esq.<br>Rachel E. Phillips, Esq.<br>BRYAN CAVE LLP<br>2 N. Central Ave., Suite 2100<br>Phoenix, AZ 85004-4406<br>kyle.hirsch@bryancave.com<br>rachel.phillips@bryancave.com<br>*Attorneys for Bank of America, N.A.* |

/s/ *Misty Vasquez*

-6-
Case 2:16-bk-14176-BKM    Doc 80    Filed 01/09/17    Entered 01/09/17 12:08:33    Desc
Main Document    Page 6 of 14

# Exhibit "A"

RESOLUTE

———— problems solved.

January 7, 2017

Douglas A. Butcher
Managing Member
Industrial Ride Shop, LLC
Industrial Skate & Boards, Inc.
5325 South Kyrene Road, Suite 104
Tempe, AZ 85283

Dear Doug:

This letter agreement confirms the terms under which Industrial Ride Shop, LLC and Industrial Skate & Boards, Inc. (collectively, "Company") will engage Resolute Commercial Services, LLC ("Resolute") as its financial advisor with respect to the Company's jointly administered bankruptcy cases (collectively, the "Case"), related restructuring and/or sale efforts, and such other financial matters as to which the Company and Resolute may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes affiliates of the Company and any entity that the Company or its affiliates may form or invest in to consummate a restructuring, and any successor to or assignee of all or a portion of the assets and/or businesses of the Company, whether pursuant to a plan of reorganization or otherwise.

1. Subject to Bankruptcy Court approval of its retention and employment as required by chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), Resolute shall provide financial advisory services to the Company in connection with the Company's efforts to improve its financial and operating performance, reporting directly to the managing member, and to assist the Company in its reorganization and restructuring efforts. It is anticipated that Resolute's activities will include the following:

   a. to the extent feasible, familiarizing itself with the business, operations, properties, financial condition, secured and unsecured debt, and prospects of the Company;

   b. reviewing and analyzing the Company's cash liquidity and assist management in identifying areas of improvement;

   c. assisting in the determination of a capital structure for the Company;

   d. providing financial advice and assistance to the Company in developing a restructuring plan (as the same may be modified from time to time, a "Plan")under the Bankruptcy Code;

   e. attending meetings with the Company and with the Company and any parties in interest, the United States Trustee's Office, and any committees that may be appointed in the Case;

   f. providing testimony, as necessary, with respect to matters which we have been engaged to advise the Company on in any proceeding before the Bankruptcy Court, if applicable; and

   g. being available to the managing member of the Company and its bankruptcy counsel regarding the services to be provided as described herein.

   h. assisting the Company in connection with financial issues, including assistance in preparation of reports and liaison and negotiations with creditors, both secured and unsecured;

   i. driving, coordinating, and/or guiding negotiations with Company lender(s), as necessary;

  j. negotiating with potential investors, current and former employees, landlords, sellers, buyers, suppliers, contractors, creditors, customers and other stakeholders, to restructure the operations, contracts, ownership, governance, organizational and capital structure, assets and liabilities of the Company as may be feasible and necessary;

  k. assisting in any negotiation and successful sale of any non-core or excess assets of the Company.

In rendering its services hereunder, Resolute is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any transaction; although the managing member is entitled to rely on Resolute's advice. The Company agrees that Resolute shall not have any obligation or responsibility to provide accounting, audit, tax or legal services and shall have no responsibility to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice. It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Resolute to underwrite, place or purchase any financing or securities.

Resolute will submit all requests for all reasonable and relevant information concerning the business, assets, operations, financial condition and prospects of the Company to the individual(s) identified by the Company and the Company shall make available to Resolute all such information that Resolute reasonably requests (including reports or studies prepared by strategic or financial or restructuring advisors engaged by the Company) in connection with the services to be performed for the Company hereunder and shall provide Resolute with reasonable access to the Company's officers, directors, employees, managers, general partners, independent accountants and other advisors and agents as Resolute shall deem appropriate. The Company represents that, to the best of its knowledge and information, all information furnished by it or on its behalf at the Company's direction to Resolute will be accurate and complete in all material respects. The Company recognizes and confirms that in performing its services hereunder, Resolute will be using and relying on publicly available information and on data, material and other information furnished to Resolute by the Company and other parties. It is understood that in performing under this engagement Resolute may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

2. Resolute acknowledges that upon Bankruptcy Court approval of its retention, Resolute's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders. Resolute's compensation for services rendered under this agreement will consist of the following fees, which shall be paid by the Company as promptly as practicable, subject to the standard of review provided for in Section 328(a) of the Bankruptcy Code:

  a. a monthly financial advisory fee of $20,000 ("Monthly Fee") for at least the first 60 days of the engagement (the "Initial Period"), or $40,000 guaranteed, and continuing thereafter subject to evaluation and further agreement by Resolute and the Company on or before the expiration of the Initial Period; and

  b. a "Restructuring Fee" of $50,000 at the conclusion of the Case defined as the following:

   For purposes of this agreement, the Restructuring Fee shall be payable based on any of the following (a) recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase, repurchase and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's debt securities and/or other indebtedness, obligations or liabilities (including

partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including without limitation pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations, and/or (b) the disposition to one or more third parties in one or a series of related transactions of (x) all or substantially all of the equity securities of the Company by the security holders of the Company or (y) all or substantially all of the assets or businesses of the Company or its subsidiaries, including without limitation through a sale or exchange of capital stock, options of assets; a lease of assets with or without a purchase option, a merger, consolidation or other business, combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction.

The Company acknowledges and agrees that the fees payable to Resolute hereunder for the Initial Period are reasonable. The Company and Resolute acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Resolute have taken this into account in setting the fees hereunder.

3. In addition to any fees payable by the Company to Resolute hereunder, the Company shall reimburse Resolute on a monthly basis for its travel and other reasonable out-of-pocket expenses incurred in connection with, or arising out of Resolute's activities under or contemplated by this engagement. Such reimbursements shall be made promptly upon submission by Resolute of statements for such expenses.

4. The Company agrees to indemnify Resolute and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Resolute's engagement hereunder.

5. The Company agrees that none of Resolute, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by any of the Companies which are finally judicially determined to have resulted primarily from the negligence; willful, wanton, or intentional misconduct; or breaches of fiduciary duties of a Covered Person; provided, however, that in no event shall the Covered Persons' aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Resolute actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination that the claimant's damages were caused by the gross negligence or willful misconduct of a Covered Person.

6. This agreement and Resolute's engagement hereunder may be terminated by the Company or Resolute at any time, with or without cause, upon prior written notice thereof to the other party; provided, however, that (a) termination of Resolute's engagement hereunder shall not affect the Company's continuing obligation to indemnify Resolute and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 6 hereof, (b) notwithstanding any such termination, Resolute shall be entitled to the full fees, in the amounts and at the times provided for in paragraph 2 hereof, that are accrued prior to such termination, and (c) any termination of Resolute's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof. Resolute has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party. Unless otherwise specifically agreed in writing with respect to identified issues, the advice (oral or written) rendered by Resolute pursuant to this agreement is intended solely for the benefit and use of the Company in considering

the matters to which this agreement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without Resolute's prior approval (which shall not be unreasonably withheld), except as required by law.

7. This agreement shall be deemed to be made in Arizona. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Arizona without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in the federal court sitting in the state of Arizona for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions. The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH RESOLUTE'S ENGAGEMENT IS HEREBY WAIVED.

8. This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Resolute and the Company and their respective successors and assigns. This agreement is not intended to confer any rights upon any shareholder, creditor, member, owner or partner of the Company, or any other person or entity not a party hereto other than (i) the indemnified persons referenced in the indemnification provisions attached hereto as Annex 1, (ii) the members of the Company (although not in their personal capacity) and (iii) the Covered Persons referenced above.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with the Company's understanding by signing and returning to us the enclosed duplicate of this letter, which, subject to Bankruptcy Court approval, shall constitute a binding agreement between Resolute and the Company.

Very truly yours,
RESOLUTE COMMERCIAL SERVICES, LLC
By: _____
Name: Jeremiah Foster
Title: Principal

Accepted and Agreed to:
Industrial Ride Shop, LLC
Industrial Skate & Boards, Inc.

By: _____
Douglas A. Butcher
Managing Member

the matters to which this agreement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without Resolute's prior approval (which shall not be unreasonably withheld), except as required by law.

7. This agreement shall be deemed to be made in Arizona. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Arizona without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in the federal court sitting in the state of Arizona for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions. The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH RESOLUTE'S ENGAGEMENT IS HEREBY WAIVED.

8. This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Resolute and the Company and their respective successors and assigns. This agreement is not intended to confer any rights upon any shareholder, creditor, member, owner or partner of the Company, or any other person or entity not a party hereto other than (i) the indemnified persons referenced in the indemnification provisions attached hereto as Annex 1, (ii) the members of the Company (although not in their personal capacity) and (iii) the Covered Persons referenced above.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with the Company's understanding by signing and returning to us the enclosed duplicate of this letter, which, subject to Bankruptcy Court approval, shall constitute a binding agreement between Resolute and the Company.

Very truly yours,
RESOLUTE COMMERCIAL SERVICES, LLC
By: _____
Name: Jeremiah Foster
Title: Principal

Accepted and Agreed to:
Industrial Ride Shop, LLC
Industrial Skate & Boards, Inc.

By: _____
Douglas A. Butcher
Managing Member

**Annex 1**

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Resolute Commercial Services, LLC ("Resolute") as financial advisor to Industrial Ride Shop, LLC and Industrial Skate & Boards, Inc. (the "Company), the Company hereby agrees to indemnify and hold harmless Resolute and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Resolute's activities under Resolute's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the negligence; willful, wanton, or intentional misconduct; or breaches of fiduciary duties of an indemnified person. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of January _, 2017, between Resolute and the Company, and, of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Resolute and the payment of the fees and disbursements of such counsel. In the event, however, Company's or an indemnified person's counsel reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Resolute, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Resolute or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Resolute and each other indemnified person hereunder from all liability arising out of such claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Resolute is the indemnified person), the Company, and Resolute will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Resolute, on the other hand, in connection with Resolute's

engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Resolute, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Resolute, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Resolute from the Company pursuant to Resolute's engagement referred to above. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

The Company further agrees that it will promptly reimburse Resolute and any other indemnified person hereunder for all reasonable expenses (including fees and disbursements of counsel) as they are incurred by Resolute or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Resolute or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Resolute or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Resolute's engagement.